IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | No. 23-CR-470 JB |
| **COURTNEY SARAH FRANK**, ) | |
| Defendant. ) | |

### UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits this *Sentencing Memorandum* for this Court's consideration. The United States asks this Court to accept Defendant's guilty plea to Count 1, Involuntary Manslaughter contrary to 18 U.S.C. §§ 1153 & 1112. (Doc. 27). The United States further asks this Court to sentence Defendant to prison for 37 months, with not less than a three-year period of supervised release to follow.

### FACTS

1. At roughly 10:00 pm on Wednesday, September 28, 2022, a fatal two-car wreck occurred in Shiprock, within the external boundaries of the Navajo Nation. One car (a Buick Encore SUV) was driven by 19-year-old Courtney Frank (Defendant). Defendant's front-seat passenger was her 23-year-old boyfriend (V.H.). The rear-seat occupant was an 18-year-old high-school student (K.J.) who was Defendant's friend. The other car (a Nissan Juke, a smaller SUV) was driven by Jane Doe. Her son (John Doe) was front-seat passenger. All parties are members of the Navajo Nation.

2. The wreck occurred on Mesa Farm Road, a level, two-lane asphalt road with wide shoulders on either side. The area was rural with no artificial or ambient lighting. The posted speed limit is 35 miles per hour.

3. The Does were returning home from a Shiprock laundromat at the time of the wreck. John Doe said his mother was driving slowly. He saw the Encore drift from its lane and collide head-on with their car. Jane Doe survived the initial impact but died on scene. John Doe sustained injuries to his shoulder and right leg. Neither Jane nor John Doe showed signs of intoxication.



*Encore on the left, Juke on the right.*

4. Body camera videos from responding Navajo Nation Police Department officers shows V.H. repeatedly saying he told Defendant not to drive and that she was intoxicated. The footage shows Defendant in the Encore's driver's seat. An officer reached into Defendant's

grab area while she was stuck in the driver's seat and removed a bottle of hard liquor from the floorboard.

5. Police and medical personnel reported all three Encore occupants displayed signs of intoxication. Several bottles (large and small) and cans of alcohol were found in the Encore.

6. Defendant's BAC was .327. V.H.'s BAC registered a comparable .315. K.J.'s BAC was .239.

7. Through statements of K.J. (who was interviewed two weeks later) and V.H. (who made statements that night), it was learned the Encore occupants began drinking that day around 3:30 pm. V.H. bought the alcohol. V.H. was driving for much of the afternoon, but relinquished driving to Defendant at her request. V.H. fell asleep and awoke to the car flipping. V.H. says Defendant was driving when this occurred.

8. K.J. had no recollection of the crash or of Defendant driving. When she was awake, she recalled V.H. being at the wheel. She does, however, remember Defendant wanting to drive. K.J. recalled all three of them being intoxicated.

9. After the wreck, New Mexico State Police Patrolman Todd Sibley analyzed black-box data from each car. Data from the Juke showed that just before the crash, Jane Doe was travelling 43 MPH with a steering angle consistent with a driver observing a steady left-hand curve. She applied the brakes slightly before impact and turned the steering wheel to the right in an avoidance attempt. Data from the Encore showed that before the crash Defendant was travelling 55 MPH and did not apply her brakes. There is no steering data available, but crash damage indicates Defendant may have turned right at the moment of

impact in a fruitless effort to maintain her proper lane of travel. Sibley said the impact occurred in the Juke's traffic lane.

10. On April 11, 2023, Defendant was indicted for the involuntary manslaughter of Jane Doe (Count 1) and assault resulting in serious bodily injury on John Doe (Count 2). (Doc. 2).

11. On September 14, 2023, Defendant pled guilty to Count 1 pursuant to Rule 11(c)(1)(B). (Doc. 25, ¶ 3). The United States agreed to dismiss Count 2 after sentencing, (*Id.* ¶ 21), and to reduce Defendant's base-offense level by up to three points for acceptance of responsibility. (*Id.* ¶ 9(a)).

## SENTENCING-GUIDELINE COMPUTATION

United States Probation Officer Jazmine Burt calculated the applicable guideline range:

| Action | Number | Reference |
|---|---|---|
| Base-Offense Level | 22 | U.S.S.G. § 2A1.4(a)(2)(B) (*Involuntary manslaughter*) |
| Adjustment | -3 | *Id.* § 3E1.1(a), (b) (*Acceptance of responsibility*) |
| Total Offense Level | 19 | |
| Criminal-History Category | I | |
| Advisory Sentencing Range | 30-37 mos. | |
| | 2.5-3.08 yrs. | |

(Doc. 27, ¶¶ 22-31, 57). The United States agrees with Officer Burt's calculations.

## OBJECTIONS TO THE PRE-SENTENCE REPORT

The United States has no objections or additions to Officer Burt's report, other than the facts as stated above.

## ANALYSIS UNDER 18 U.S.C. § 3553(a)

In consideration of the following, the United States requests this Court sentence Defendant to 37 months in prison.

1. **The nature and circumstances of the offense and Defendant's history and characteristics.**

    A sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). This analysis "is aimed at distinguishing among defendants who commit a particular offense or type of offense." *United States v. Irey*, 612 F.3d 1160, 1202 (11th Cir. 2010).

    Officer Burt notes quite a few factors that cut towards a shorter sentence. Defendant is exceptionally young (Doc. 27, p. 2); she has no criminal history (*id*. ¶¶ 33-35, 46); she was abused as a child (*id*. ¶ 40); she "is a positive support within the family dynamic" who assists with finances and childcare (*id*. ¶ 41); she lives in a stable home that is a "suitable placement for any supervision-related needs" (*id*. ¶ 42); and she has complied with all conditions of pre-trial release without incident. (*Id*. ¶ 7). And while these factors undoubtedly merit consideration by this Court, the fact remains that Defendant was presumably entrenched in this same support system when she chose to drink to excess and inadvertently wreck her car into a mother and son. Defendant must appreciate how her purposeful actions forever turned her victims' lives "upside down." (*Id*. ¶¶ 15-17).

2. **The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, adequate deterrence, and to protect the public from further crimes of Defendant.**

    A significant sentence of imprisonment is necessary to reflect the seriousness of the crime of murder and provide adequate deterrence. Deterrence includes both general deterrence and specific deterrence. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). While general deterrence's goal is to "deter others from committing the same crime by demonstrating its

5

disadvantageous consequences," the goal of specific deterrence is "to incapacitate the wrongdoer, so as to protect society from further criminal activity." *United States v. Irey*, 612 F.3d 1160, 1227 (11th Cir. 2010). An overly lenient sentence "signals to others that it is not a big deal to repeatedly defy United States' laws." *United States v. Corchado-Aguirre*, No. 15-2115, 2015 WL 6123216, at *3 (10th Cir. Oct. 19, 2015) (unpublished).

While it might seem like ordinary prosecutorial behavior for the United States to request a high-end guidelines sentence, undersigned counsel respectfully encourages this Court to contextualize the government's request. Defendant made the volitional choice to drink alcohol and drive an SUV, killing one innocent driver and severely injuring a passenger. A sentence of 37 months—even though it is located squarely at the highest-end of the guideline range—does not sufficiently capture Defendant's criminal conduct or the unnecessary human loss associated with this crime.

The victims in this case have demonstrated remarkable levels of emotional empathy for Defendant. Rather than simply (and understandably) state to PO Burt that they wish for Defendant to be incarcerated for as long as the law permits, both Jane Doe's husband and son (John Doe) expressed a desire for Defendant to learn from this event and "get the help she needs regarding her substance use[]" such that this harm will not befall another family. (Doc. 27, ¶ 17).

3. **The Sentencing Guidelines for the applicable category of offense committed by the applicable category of Defendant.**

This Court must consider under 18 U.S.C. § 3553(a)(4) the sentencing range established by the United States Sentencing Commission for the applicable category of offense committed by the applicable category of defendant. The Supreme Court has recognized that even in the post-

6

*Booker* world "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise…'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). "In the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve 3553(a)'s objectives.'" *Id*.

The applicable guideline range for this crime is 30 to 37 months. This Court is free to sentence within (or even outside) this guidelines range.

4. **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

This court must consider the need to avoid unwarranted sentence disparities among defendants situated similarly. 18 U.S.C. § 3553(a)(6). A sentence within the statutory limit accounting for the guideline range is the best approach to preventing unwarranted sentencing disparities between similarly situated defendants. The values of the justice system are undermined when there is substantial variance in sentences for similar offenses between judicial districts and even between individual judges in a single district. This factor is designed to avoid nationwide disparities in sentencing. *United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993).

Officer Burt's research noted 62 defendants similarly situated with this Defendant:

> For the 58 defendants (94%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 34 month(s) and the median length of imprisonment imposed was 34 month(s). For all 62 defendants in the cell, the average sentence imposed was 32 month(s) and the median sentence imposed was 30 month(s).

(Doc. 27, ¶ 78).

**CONCLUSION & REQUEST FOR RELIEF**

For the reasons stated herein, the United States respectfully asks this Court to:

- Accept Defendant's guilty plea to Count 1, Involuntary Manslaughter. (Doc. 27).

- Sentence Defendant to prison for 37 months, with not less than a three-year period of supervised release to follow release from custody.

Respectfully submitted,

**ALEXANDER M.M. UBALLEZ**
United States Attorney

ZACH JONES
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
zachary.jones2@usdoj.gov

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will cause a copy of this filing to be sent to counsel for Defendant, James C. Loonam.

ZACH JONES
Assistant United States Attorney